UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-09-348-B-W |
| | ) | |
| GREGORY A. HARRIMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO AMEND JUDGMENT OF FORECLOSURE AND ON MOTION FOR RELIEF FROM JUDGMENT**

Concluding that the mortgagee inadvertently failed to comply with the public notice provisions of its earlier foreclosure judgment, the Court grants the mortgagee's motion to amend the foreclosure judgment to void the public sale and to provide for a new period of public notice and sale, and the Court denies the mortgagors' motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b), seeking to void the entire Foreclosure Judgment. Applying Maine law, the Court concludes that once the redemptive period has run, errors in the sales process do not constitute grounds for voiding the foreclosure judgment and that equity requires the time periods for advertising and holding the public sale be reset.

**I. STATEMENT OF FACTS**

**A. The Foreclosure Action Leading to Judgment**

On August 4, 2009, the United States of America filed a complaint for foreclosure against Gregory A. Harriman and Kathryn P. Harriman, alleging that:

1) on April 23, 1991, the Harrimans obtained a loan from the United States Department of Agriculture in the amount of Sixty Two Thousand Dollars ($62,000.00), as evidenced by a promissory note secured by a real estate mortgage involving land in Unity, county of Waldo, state of Maine; 2) that they had failed to comply with the conditions of payment; and 3) that the United States was entitled to a foreclosure of the Unity property.[1] *Compl.* (Docket # 1). On September 1, 2009, the Harrimans answered the Complaint and counterclaimed against the United States. *Ans. and Countercl.* (Docket # 8). On January 5, 2010, the United States moved for summary judgment against the Harrimans. *Mot. for Summ. J.* (Docket # 17). The Harrimans did not respond and on February 3, 2010, the Court entered Judgment against them. *J. of Foreclosure and Sale* (Docket # 21) (*J.*).

**B. Post-Judgment Developments**

The Judgment of Foreclosure and Sale fixed an amount due from the Harrimans to the United States under the terms of the mortgage and provided that if they did not pay the United States "the amount adjudged to be due herein within 90 days from the date of this Order," a representative of the United States "shall sell the mortgaged premises in one parcel or in separate parcels at public sale

---

[1] The Complaint listed Miracle Feeds, Inc. and Waldo County General Hospital as parties-in-interest. *Compl.* On November 5, 2009, the United States moved for the entry of default against Waldo County and the Clerk entered default on November 6, 2009. *Req. to Clerk to Enter Default* (Docket # 11); *Order* (Docket # 12). On November 30, 2009, the United States moved for the entry of default against Miracle Feeds and the Clerk entered default on December 2, 2009. *Req. to Clerk to Enter Default* (Docket # 13); *Order* (Docket # 14). On January 5, 2010, the United States moved for default judgment against both Waldo County Hospital and Miracle Feeds and, after neither objected, the Court issued a default judgment on February 3, 2010. *Mot. for Default J.* (Docket # 16); *Order* (Docket # 20). Neither Waldo County Hospital nor Miracle Feeds joined the Harrimans' post-judgment motion and opposition.

2

pursuant to the requirements of 28 U.S.C. Section 2002, 14 M.R.S.A. Sections 6323, 6324, and this judgment." *Id.* at 2. The Judgment also provided:

> Notice of said sale shall be given by publishing a Notice of Sale, in a newspaper of general circulation in Waldo County, Maine, once a week for four (4) weeks. Such notice will not be published until after the expiration of the redemption period, but not later than 90 days after the expiration of the redemption period. This sale shall be held not less than thirty (30) days nor more than forty-five (45) days from the date of first publication.

*Id.*

The Government says that after the Foreclosure Judgment issued, the "redemption period expired on May 4, 2010." *Mot. to Am. J. of Foreclosure and Sale Nunc Pro Tunc* at 1 (Docket # 23) (*Gov't's Mot.*). The public sale was scheduled for July 2, 2010, and in accordance with the Foreclosure Judgment, the United States requested that the Republican Journal publish the notice of public sale for four weeks: June 2, June 9, June 16, and June 23, 2010. *Id.* The foreclosure sale was held on July 2, 2010, at the Probate Courtroom in Belfast, Maine, and the highest bidders were the Defendants. *Id.* After the sale, however, the United States discovered that the Republican Journal had only published the Notice of Foreclosure Sale three times, not the required four. *Id.* at 2.

### C. The United States' Motion and the Harrimans' Opposition and Motion

Because of the defect in publicizing the sale, on September 1, 2010, the United States moved to amend the judgment and sale *nunc pro tunc* and to republish a Second Amended Notice of Foreclosure Sale more than ninety days after the expiration of the redemptive period. *Id.* On September 9, 2010, the Harrimans objected to the United States' motion to amend and moved for relief from the

3

February 3, 2010, judgment. *Gregory and Kathryn Harriman's Ob. to Pl.'s Mot. to Amend J. of Foreclosure and Sale Nunc Pro Tunc and Mot. for Relief from J. of Foreclosure and Sale* (Docket # 24) (*Defs.' Ob. and Mot.*). On September 22, 2010, the United States replied to the Harrimans' objection to its motion and on September 23, 2010, the United States responded to the Harrimans' motion. *United States' Reply to Defs.' Ob. to the Mot. to Am. J.* (Docket # 26) (*Gov't's Reply*); *United States' Rep. in Opp'n to the Defs.' Mot. for Relief from J.* (Docket # 27) (*Gov't's Opp'n*).

### D. The Parties' Positions

In its first motion, the United States simply recited the facts surrounding the publication error in June 2010, and asked the Court to amend the original Judgment and Foreclosure Sale dated February 3, 2010, *nunc pro tunc* to allow for publication of a Second Amended Notice of Foreclosure Sale beyond the ninety day period provided in the Judgment. *Gov't's Mot.* at 1-2.

The Harrimans objected and moved for relief from judgment. *Defs.' Ob. and Mot.* at 2. The Harrimans quote 14 M.R.S. § 6323, which provides in part that "the first publication [is] to be made not more than 90 days after the expiration of the period of redemption." *Id.* at 1. Citing *The Cadle Co. v. LCM Associates*, 2000 ME 73, ¶ 7, 749 A.2d 150, 152, they assert that "this Court has no power to amend the statute." *Id.* at 1-2. They contend that, to effect a legal foreclosure, the mortgagee must strictly follow all the steps required by statute and that the United States' failure to do so in this case must render the Foreclosure Judgment void. *Id.* at 2

4

(citing *Winter v. Casco Bank and Trust Co.*, 396 A.2d 1020, 1022-24 (Me. 1979) and *Stafford v. Morse*, 97 Me. 222, 223, 54 A. 397 (1902)).

The United States filed two responses. First, it contends that the Harrimans' argument fails to distinguish between the Foreclosure Judgment, which it describes as "unassailable", and the method of sale, which it says was "an inadvertent newspaper error." *Gov't's Reply* at 2. To support its distinction, the United States cites *Keybank National Association v. Sargent*, 2000 ME 153, ¶ 34, 758 A.2d 528. *Gov't's Reply* at 2. The United States also contends that in *Cadle*, the Maine Supreme Judicial Court vacated the deficiency, but not the foreclosure itself. *Id.* at 3.

Second, the United States urges the Court to deny the Harrimans' motion for relief from judgment on the ground that they have failed to sustain their burden of proving exceptional circumstances to set aside a foreclosure judgment under Rule 60. *Gov't's Opp'n* at 3. It further argues that the Harrimans waived any right to contest the foreclosure judgment by failing to object to the Government's motion for summary judgment. *Id.*

## II. DISCUSSION

### A. The Effect of Errors in the Notice of Public Sale of Foreclosed Property

In *Keybank*, the Maine Supreme Judicial Court resolved the Harrimans' argument that the Foreclosure Judgment is void because the public sale provisions

5

were not followed.² 2000 ME 153, ¶¶ 34-39, 758 A.2d at 537-38. In *Keybank*, after the ninety day redemptive period expired, the mortgagee published the notices of public sale with a photograph of a house different than the mortgagor's house. *Id.* ¶ 34, 758 A.2d at 537. Just as the Harrimans claim now, the mortgagor in *Keybank* contended that the bank had to "begin the entire foreclosure process anew." *Id.* The Maine Law Court disagreed:

> The notice of public sale was published after the redemption period expired. After the redemption period expires, "all rights of the mortgagor to possession terminate." See 14 M.R.S.A. § 6323(1) (Supp. 1999). Accordingly, any error in the sale process should not serve as grounds to set aside the foreclosure judgment itself. The "strict compliance" doctrine is limited to those procedures leading to the foreclosure judgment.

*Id.* ¶ 38, 758 A.2d at 537-38 (citing *Winter*, 396 A.2d at 1024, and *Stafford*, 97 Me. at 223-25, 54 A. at 398). The *Keybank* Court further explained that *Stafford* and *Winter*—both cited by the Harrimans for support—"stand for the proposition that technical errors in procuring a judgment of foreclosure may render that judgment void." *Id.* ¶ 37, 758 A.2d at 537. However, those cases did not allow, as the Harrimans contend, for a post-judgment error to void a defect-free judgment. *Id.* Thus, under *Keybank*, once the ninety day redemptive period expired in this case, any error by the United States in the timing of the public notices cannot be grounds to set aside the foreclosure judgment itself.

---

² The United States actually complied with the notice requirements of the Maine statute. Section 6323(1) of title 14 requires that the notice of the public sale "be published once in each of three successive weeks in a newspaper of general circulation in the county in which the premises are located." 14 M.R.S. § 6323(1). Consistent with the additional requirement of federal law, the Foreclosure Judgment required publication "once a week for four (4) weeks." *J.* at 2; 28 U.S.C. § 2002.

If a mortgagee has failed to comply with the public sale provisions of the law, the *Keybank* Court clarified that "the proper analysis for the trial court is whether it would be equitable to set aside the sale given the procedures that were employed by the mortgagee." *Id.* ¶ 38, 758 A.2d at 538. Here, the United States asks the Court to allow it to hold another public sale and to re-advertise the sale, this time in accordance with the directive of the Foreclosure Judgment, but beyond the ninety day period allowed by the Judgment.[3]

The equities weigh in favor of the United States. Once the redemption period expired, the United States became the legal owner of the property and the purpose of the time periods is to benefit the mortgagors to assure that the public sale is as open and competitive as possible. In *Cadle*, the Maine Supreme Judicial Court explained the purpose of the statutory time period between notice and public sale:

> The time period between publication and sale gives the public a sufficient interval to consider a purchase of property by viewing the property or arranging potential financing or investigating any of the numerable factors that bear upon a purchase of real estate. The time period provides the likelihood that more members of the public will be able to react to the notice by actually bidding on the property. This is a benefit to the mortgagor because of the potential that the property will be sold for a higher price than it would if the mortgagee was the only bidder, thus providing protection against a self-dealing mortgagee.

---

[3] Neither the United States nor the Harrimans has explained the practical subtext of these motions. The United States represented that the Harrimans themselves were the purchasers at the public sale so they obviously received notice. It is therefore difficult to understand how the Harrimans were prejudiced by three, not four weeks of advertised notice. It is possible the fourth week could have attracted the attention of another buyer, who could have purchased the property for more than the Harrimans offered, but it is speculative on this record. *See Cadle*, 2000 ME 73, ¶ 9, 749 A.2d at 153 (stating that "[p]roving prejudice, by demonstrating that the sales price would have been higher if the time limits had been followed, is an onerous burden because of the difficulty in finding people who would have bid at the sale if it had been held at the required time").

*Cadle*, 2000 ME 73, ¶ 9, 749 A.2d at 153. As the Harrimans were the successful bidders at the time of the public sale, the failure to publish the fourth notice did not result in purchase by "a self-dealing mortgagee." Furthermore, since the Harrimans were the purchasers, it is difficult to understand how they were directly affected by the absence of a fourth published notice, since they must have been aware of the public sale, and any indirect impact is speculative. The United States attempted to comply with the requirements of the Foreclosure Judgment by arranging for four published notices, but the newspaper, for unexplained reasons, failed to publish the fourth. The equities favor the relief the United States is requesting.

The Harriman's' reliance on *Cadle* for support is misplaced. *Cadle's* reach was limited to mortgagees seeking a deficiency judgment:

> We hold that a mortgagee must adhere to the statutory time requirements of [14 M.R.S.] section 6323 if it intends to seek a deficiency judgment, absent unusual or exceptional circumstances . . . .

*Id*. As the United States is not seeking a deficiency judgment, *Cadle* has limited applicability.

The Court concludes that the United States is entitled to an Order voiding the public sale of the premises, and resetting the time periods and requirements for the sale of the property that was foreclosed when the redemptive period ran in this case.

### B. The Harrimans' Motion for Relief from Judgment

Having concluded that the United States is entitled to the relief it is seeking in its motion to amend judgment of foreclosure, the Court has thus concluded that

8

the Harrimans are not entitled to the relief they are seeking in the motion for relief from judgment. However, for the sake of completeness, the Court will address the Harrimans' contentions.

The Harrimans have filed their motion pursuant to Rule 60(b). *Def.'s Mot.* at 1. The Harrimans have not specified under which subpart of Rule 60(b) they are proceeding; however, they have claimed that the "failure of the United States to comply with the statutory mandates renders the judgment void." *Id.* at 2. Accordingly, it appears that they are proceeding under Rule 60(b)(4), which provides that a party may file a motion for relief from a final judgment if "the judgment is void." FED. R. CIV. P. 60(b)(4). The First Circuit has said, however, that "[a] judgment is void, and therefore subject to relief under Rule 60(b)(4) only if the court that rendered judgment lacked jurisdiction or in circumstances in which the court's action amounts to a plain usurpation of power constituting a violation of due process." *United States v. One Rural Lot No. 10,356*, 238 F.3d 76, 78 (1st Cir. 2001).

Further, the Maine Supreme Judicial Court has cautioned that "[i]t is necessary that judgments, especially those settling property rights . . . have a high degree of stability and finality." *Keybank*, 2000 ME 153, ¶ 15, 758 A.2d at 533 (quoting *Kolmosky v. Kolmosky*, 631 A.2d 419, 421 (Me. 1993)). A court of equity may therefore provide relief once the right of redemption has expired only in "exceptional circumstances." *Id.* ¶ 11, 758 A.2d at 532. Moreover, because the Harrimans failed to respond to the United States' original motion for summary

9

judgment, the exceptional circumstances the Harriman's must prove must not include any issues that they could have raised if they had properly contested the issuance of the Judgment. *Id.* ¶ 15, 758 A.2d at 533 (stating that "because Sargent did not raise her affirmative defenses and counterclaims in the foreclosure proceedings, she is barred from using Rule 60(b) to raise those issues").

In these circumstances, the Harrimans bear a heavy burden to set aside the Foreclosure Judgment—one they have failed to carry. Their attack against the Judgment itself is based only upon procedural steps that were taken after the redemptive period had expired. Under *Keybank*, however, such flaws do not constitute a basis under Rule 60(b) for upsetting the Foreclosure Judgment. Their motion to overturn the Foreclosure Judgment must therefore be denied.

## III. CONCLUSION

The Court GRANTS the United States of America's Motion to Amend Judgment of Foreclosure and Sale *Nunc Pro Tunc* (Docket # 23) and DENIES Gregory and Kathryn P. Harriman's Motion for Relief from Judgment Pursuant to Rule 60(b) (Docket # 24).

The Court declares the public sale that took place on July 2, 2010, at the Probate Courtroom in Belfast, Maine, to be NULL and VOID, since it took place in the absence of strict compliance with the terms and conditions of the public notice provisions of the Judgment of Foreclosure and Sale dated February 3, 2010.

The Court hereby AMENDS the Judgment dated February 3, 2010 (Docket # 21) to provide:

1) The United States shall sell the mortgaged premises in one parcel or in separate parcels at public sale pursuant to the requirements of 28 U.S.C. § 2002, 14 M.R.S. §§ 6323, 6324, and this Judgment;

2) The United States shall cause to be published notice of such sale in a newspaper of general circulation in Waldo County, Maine, once a week for four (4) consecutive weeks;

3) The United States shall complete the publication of the notice of sale not later than 90 days from the date of this Order;

4) The United States shall hold a sale of the premises not less than thirty (30) days nor more than forty-five days (45) days from the date of first publication; and,

5) All the remaining terms and conditions of the original Judgment of Foreclosure and Sale remain in full force and effect.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 2nd day of November, 2010